FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 16, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BRYAN M.,[1] <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, <br> Commissioner of Social Security, <br><br> Defendant. | No.  1:25-cv-3214-EFS <br><br> **ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS** |

Plaintiff Bryan M. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 benefits because, among other reasons, the ALJ did not adequately consider mental and social

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

DISPOSITIVE ORDER - 1

limitations caused by anxiety and depression related to Plaintiff's hearing loss. The Court agrees. For the reasons that follow, even though the ALJ considered anxiety and depression nonsevere at step two, substantial evidence does not support the ALJ's residual functional capacity (RFC) finding because the ALJ's decision does not demonstrate that he substantively considered Plaintiff's mental impairments when crafting the RFC. This matter is remanded for further proceedings.

## I.    Background

Plaintiff filed his Title 2 application for benefits in November 2022 when he was 21 years old, alleging disability primarily due to Alport syndrome, a genetic disorder characterized by kidney disease and hearing loss, beginning November 10, 2021.[2] Plaintiff appeared for a hearing before ALJ Michael Comisky in January 2025, at which Plaintiff testified that he had stopped working because he had difficulties hearing others in noisy environments at his last job.[3] He

---

[2] Administrative Record (AR) 184–88, 207, 284–88.

[3] AR 43–46.

DISPOSITIVE ORDER - 2

was prescribed hearing aids in both ears but only wore one in his right ear, at the strongest possible setting, after the hearing aid for his left ear broke.[4] His difficulties hearing people also caused anxiety and depression.[5]

The ALJ issued a decision finding Plaintiff not disabled.[6] The ALJ found Plaintiff's alleged symptoms were "not entirely consistent" with the medical evidence and other evidence.[7] As to the medical opinions, the ALJ found:

- the reviewing opinions of Clarice Bell-Strayhorn, MD, and Bradley Stephan, MD, persuasive, except for their opinion that Plaintiff had no exertional limitations and Dr. Stephan's

---

[4] AR 44–45, 53–54.

[5] AR 45–47.

[6] AR 17–28. Per 20 C.F.R. § 404.1520(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[7] AR 23. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499 n.2 (9th Cir. 2022).

DISPOSITIVE ORDER - 3

opinion that Plaintiff should avoid even moderate exposure to noise.

- the treating opinion of Jessica Roberts, DO, not persuasive.[8]

As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through December 31, 2023.

- Step one: Plaintiff had not engaged in substantial gainful activity since November 10, 2021, the alleged onset date, through his date last insured of December 31, 2023.

- Step two: Plaintiff had the following medically determinable severe impairments: bilateral sensorineural hearing loss; headaches; and Alport syndrome.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to:

  perform a full range of light work as defined in 20 CFR 404.1567(b) with the following nonexertional limitations:

---

[8] AR 24–25.

DISPOSITIVE ORDER - 4

He should avoid concentrated exposure to high temperatures. He can work at moderate noise levels. He should not do telephone type work duties, like at a call center, due to use of hearing aids. He should avoid concentrated exposure to vibration. He should not work around hazards such as unprotected heights or around dangerous machinery.

- Step four: Plaintiff was capable of performing his past relevant work as an agricultural packer.

- Step five: alternatively, considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as cleaner-housekeeping and router.[9]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council, which denied review.[10] Plaintiff now appeals to district court.[11]

---

[9] AR 19–27.

[10] AR 1–3.

[11] ECF No. 1.

DISPOSITIVE ORDER - 5

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error"[12] and such error impacted the nondisability determination.[13] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[14]

---

[12] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[13] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[14] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence

### III.   Analysis

Plaintiff argues the ALJ erred by finding he could return to his past relevant work as an agricultural packer, finding he did not have a severe medically determinable mental impairment or any mental or social RFC limitations, improperly assessing his alleged symptoms, and improperly assessing the medical opinions. The Commissioner argues the ALJ committed no consequential error and substantial evidence supports the ALJ's decision.

**A.    Assessment of Mental Disorders: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ reversibly erred by not properly assessing his mental impairments, first by finding no severe mental impairment at step two, and next by not assessing whether his mental impairments caused any limitations when crafting the RFC.

---

cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

DISPOSITIVE ORDER - 7

1.    Standard

At step two, the ALJ determines whether the claimant suffers from a medically determinable "severe" impairment, i.e., "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."[15] To determine whether a mental impairment is severe, the ALJ first rates the degree of limitation (either none, mild, moderate, marked, or extreme) in four broad functional areas called the "paragraph B" criteria: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.[16] If the ALJ rates the degrees of limitation as "none" or "mild," then the ALJ "will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability

---

[15] 20 C.F.R. § 404.1520(a)(4)(ii), (c).

[16] 20 C.F.R. § 404.1520a(c)(3)–(4). *See* 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00(E).

to do basic work activities."[17] When an ALJ resolves step two in a claimant's favor by finding a medically determinable severe impairment, any error in failing to find other severe impairments is harmless at step two; however, step-two error can be prejudicial at a later step in the sequential disability analysis.[18]

Step two "is not meant to identify the impairments that should be taken into account when determining the RFC" as step two is meant only to screen out weak claims.[19] The RFC is "the most [the claimant] can still do despite [his] limitations."[20] The ALJ must base the RFC "on

---

[17] 20 C.F.R. § 404.1520a(d)(1).

[18] *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) ("Assuming without deciding that this omission constituted legal error [at step two], it could only have prejudiced Burch in step three (listing impairment determination) or step five (RFC) because the other steps, including this one, were resolved in her favor.").

[19] *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017).

[20] 20 C.F.R. § 404.1545(a)(1).

all the relevant evidence in [the] case record."[21] In crafting the RFC, the ALJ must consider limitations caused by all medically determinable impairments, even those that are not "severe" at step two.[22]

### 2. ALJ's Findings

At step two, the ALJ found Plaintiff had the severe impairments of bilateral hearing loss, headaches, and Alport syndrome, but Plaintiff's medically determinable anxiety disorder and depressive disorder were non-severe impairments.[23] The ALJ explained that Plaintiff's mental disorders caused no limitation in adapting or managing himself; and only mild limitations in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace.[24] The ALJ reasoned as follows:

---

[21] *Id.*

[22] *Id.* § 404.1545(a)(2), (e).

[23] AR 20.

[24] AR 20.

DISPOSITIVE ORDER - 10

> The claimant reported a history of anxiety and depression characterized by low mood, lack of interest in activities, isolation, sleep disturbance, low energy, low motivation, and difficulty concentrating, remembering, understanding, and following instructions . . . . He also testified that his anxiety can be triggered by noisy environments. He reported receiving counseling services in high school, but he did not continue with treatment until March 2024 . . . . He was first seen at the behavioral health center at Yakima Valley Farm Workers Clinic, then transitioned to mental health services at Comprehensive Healthcare in September 2024 . . . . He attended three visits, missed his fourth, then was terminated from the program on October 29, 2024 . . . . When questioned as to why he missed his appointment, he stated he was out of town with his mother at the time . . . . Notably, he was not prescribed any psychotropic medications. Moreover, objective mental status examinations in the file consistently described him as pleasant, cooperative, oriented, engaged, and dressed appropriately, with normal mood and affect, unremarkable speech, normal behavior and functioning, and linear and goal-directed thought processes . . . .[25]

Additionally, the ALJ reasoned that Plaintiff was capable of performing "a wide variety of daily activities independently."[26] Further, the ALJ was persuaded by the paragraph B findings of the state agency psychological consultants, and not persuaded by the consultative

---

[25] AR 20–21 (citations omitted).

[26] AR 21.

DISPOSITIVE ORDER - 11

examiner who opined that Plaintiff would have substantial difficulties in mental functioning at work.[27]

The ALJ stated that his explanation of the paragraph B criteria was for purposes of steps two and three, and was not a RFC assessment, because "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment."[28] The ALJ sated, "The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis."[29]

The ALJ discussed the mental health evidence only once in the RFC analysis section of his decision, mentioning Plaintiff's anxiety when describing his daily activities:

> The lack of significant deficits in functioning is further supported by the claimant's wide variety of daily activity, which is inconsistent with the level of limitation alleged by the claimant. As discussed above, he is able to maintain his

---

[27] AR 21–22.

[28] AR 21.

[29] AR 21.

DISPOSITIVE ORDER - 12

personal hygiene, clean his room, do his assigned chores, and clean up after himself . . . . Although he reported that he does not typically leave his house due to social anxiety and his hearing loss, he is able to shop in stores for necessities and go out to eat with friends . . . . He also reported that he enjoys spending time with others in person or by text, reading, listening to music, playing video games, taking naps, and painting or drawing with his little brothers . . . .[30]

### 3.    Analysis

The ALJ erred by not considering whether Plaintiff's mental impairments caused RFC limitations even if they were not severe at step two. The ALJ's step-two discussion—considering Plaintiff's subjective reports, mental health treatment records, Plaintiff's activities, and the medical opinions—demonstrates adequate consideration of the degrees of limitation in the paragraph B criteria. But, as the ALJ said, "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment."[31] That "more detailed

---

[30] AR 24 (citations omitted).

[31] AR 21. *See* 20 C.F.R. § 404.1545(a)(2), (e).

DISPOSITIVE ORDER - 13

assessment" never came. On this record, the Court cannot infer that the ALJ substantively considered the mental RFC.

Plaintiff testified that he had depression and anxiety connected to noisy environments and not being able to hear others due to his hearing loss and hearing aid.[32] It caused him to have low energy and not want to leave the house several days a week.[33] He reported getting frustrated quickly, isolating himself, not leaving the house, and avoiding people as a result of his hearing-related anxiety.[34] Starting in July 2024, he received behavioral health counseling for depression and anxiety that had worsened recently.[35] He told his therapist that his social anxiety was connected to his hearing loss and hearing aid.[36] He attended five more therapy appointments for depression and anxiety related to hearing loss and causing low motivation and social isolation,

---

[32] AR 45–46.

[33] AR 46–47.

[34] AR 224–30.

[35] AR 434, 436.

[36] AR 434, 436.

plus an additional primary care visit related to noise-triggered anxiety, through October 2024 before he was discharged for missing an appointment.[37] At one appointment, his PHQ-9 and GAD-7 scores indicated severe depressive and anxiety symptoms for clinical attention.[38] He reported having passing thoughts of not wanting to be alive and had the fleeting thought of grabbing a knife the week prior.[39] He was referred for "moderate intensive services."[40]

A consulting psychologist, Joel Mitchell, PhD, examined Plaintiff via telehealth in October 2023.[41] Dr. Mitchell reported that Plaintiff said his anxiety symptoms began when he started losing his hearing and had worsened over time.[42] He had 6/10 current anxious distress.[43]

---

[37] AR 437, 440, 443, 455, 470, 472.

[38] AR 455.

[39] AR 460.

[40] AR 462.

[41] AR 382.

[42] AR 382.

[43] AR 382.

DISPOSITIVE ORDER - 15

His primary concern was anxiety and self-consciousness in social situations due to his difficulties hearing people, causing him to avoid socializing.[44] Dr. Mitchell opined that Plaintiff would have substantial difficulties with the following: accepting instructions from supervisors; interacting with coworkers and the public; performing work activities on a consistent basis without special or additional instructions; maintaining regular attendance and completing a typical workday or workweek without interruptions from a psychiatric condition; and dealing with typical stressors of the workplace.[45]

Without any substantive analysis of this evidence, the RFC with no mental or social limitations is not supported by substantial evidence. The ALJ considered Dr. Mitchell's opinion, generally described some of Plaintiff's mental health symptom reports, identified some of Plaintiff's mental health treatment, and cited Plaintiff's daily activities. But the ALJ did not analyze the content of the medical treatment records, and instead only said that Plaintiff attended

---

[44] AR 382–83.

[45] AR 386–87.

DISPOSITIVE ORDER - 16

therapy and was discharged for missing an appointment without being prescribed medication. The ALJ also did not adequately explain how Plaintiff's activities of daily living support an RFC with no social or mental limitations. Neither his independent activities at home nor his limited socializing with friends and family rationally discount his consistent reports that he struggled significantly with anxiety caused by having trouble hearing others. This anxiety could rationally impact Plaintiff's ability to interact with others, carry out instructions, handle stress, stay on task, and complete a workday, none of which the ALJ considered as part of the RFC assessment. Finally, except for a passing mention of social anxiety, the ALJ made all his mental health findings to explain his paragraph B findings, which is not an RFC determination.

In sum, the record contains significant evidence of mental impairments that would seemingly limit, at least to some extent, Plaintiff's mental and social capabilities for purposes of full-time employment. The ALJ did not adequately consider this evidence. Therefore, substantial evidence does not support the crafted RFC with no mental or social limitations.

DISPOSITIVE ORDER - 17

**B.    Other Issues: The ALJ must reevaluate on remand.**

Plaintiff separately challenges the ALJ's assessment of Plaintiff's allegations and the medical opinions, raising arguments related to the mental health evidence and other evidence.[46] The Court need not address these separate challenges because remand is necessary for adequate consideration of the mental RFC, and the ALJ's adequate consideration of the mental RFC on remand will necessarily entail addressing Plaintiff's allegations of his mental health symptoms and the mental health medical opinions.

## IV.    Conclusion

Plaintiff establishes the ALJ erred. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—the sequential process. When engaging in the five-step

---

[46] Plaintiff also challenges the ALJ's finding that Plaintiff could return to his past relevant work at step four, but any error in this regard was harmless because the ALJ proceeded to step five in the alternative and found that Plaintiff could also adjust to other work existing in significant numbers in the national economy. AR 25–27.

DISPOSITIVE ORDER - 18

disability evaluation on remand, the ALJ is to specifically consider whether the evidence related to Plaintiff's depression and anxiety support mental or social limitations in the RFC. This analysis should be more detailed than the reasoning as to the paragraph B criteria for purposes of steps two and three.

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 10 and 14**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 16th day of June 2026.

_____

EDWARD F. SHEA
Senior United States District Judge

DISPOSITIVE ORDER - 19